907 F.2d 1577
 134 L.R.R.M. (BNA) 2783, 61 Ed. Law Rep. 876,
5 Indiv.Empl.Rts.Cas. 1596
 Sallie Elizabeth JOHNSTON-TAYLOR, Individually and as
Administratrix of the Estate of Edward Taylor; Brinton
Scott; Kimberly Taylor, Individually; David Arganian;
Lilian Arganian, Individually, Plaintiffs-Appellants,
v.
Philip J. GANNON, Individually and as President of Lansing
Community College; Board of Trustees of Lansing
Community College, Individually, Jointly
and Severally, Defendants-Appellees.
 No. 89-1682.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 5, 1990.
Decided July 13, 1990.
 
 Charles H. Noble, Flat Rock, Mich., Joseph A. Warren, III, argued, Lansing, Mich., for plaintiffs-appellants.
 Robert C. Claus, Anne E. Williams, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Patrick R. Hogan, argued, Joseph D. Reid, Reid, Reid, Perry, Lasky, Hollander & Chalmers, Charles R. MacLean, MacLean, Seaman, Laing & Guilford, Lansing, Mich., for defendants-appellees.
 Before MARTIN and JONES, Circuit Judges, and FEIKENS, Senior District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 David Arganian and the estate of Edward Taylor appeal the district court's decision granting summary judgment for Philip J. Gannon, President of Lansing Community College, and the Board of Trustees of Lansing Community College in this wrongful discharge action. Arganian and Taylor, former professors at Lansing Community College, contend that their procedural due process rights were violated because they were denied a hearing on the necessity of a lay-off under which they were discharged. Because we believe there is a sufficient question of the validity of the procedural due process provided to Professors Arganian and Taylor, we reverse and remand.
 
 
 2
 Lansing Community College hired David Arganian in 1961 and Edward Taylor in 1966 as full-time instructors. Professor Arganian became a tenured faculty member in 1968. Professor Taylor was employed pursuant to a continuing contract.
 
 
 3
 In 1968, the College faculty voted to establish a collective bargaining unit, and thereafter the Board of Trustees and the faculty union entered into a collective bargaining agreement. Both Arganian and Taylor were charter and active members of the faculty union. When the professors were discharged in 1983, Taylor was president of the union and a vocal critic of President Gannon and the Board of Trustees. The professors contend that Gannon and the Board wanted to discharge them for personal and other reasons but lacked good cause under the collective bargaining agreement. The College claims that a financial exigency existed at the time and that both were dismissed under a reduction in staff.
 
 
 4
 The College claims that several factors caused the alleged financial exigency. During the fiscal 1982-83 year, the State of Michigan reduced a portion of the College's state aid. In March 1983, the Board of Trustees contracted to purchase $250,000 of high technology equipment. Anticipating a large budget deficit, the Board authorized a millage election under Michigan law which allows a local community to impose a tax upon itself for a specific purpose. The millage proposal was defeated in June 1983.
 
 
 5
 In response to the budget deficit, the College increased tuition by $1/credit hour and decreased spending in a number of areas. In addition, the College approached the leadership of the five employee bargaining units to obtain wage or benefit concessions. Only one union agreed to any of the proposals. Professor Taylor was president of the faculty union when it rejected the proposals.
 
 
 6
 The College thus decided to reduce its faculty to balance the budget. The agreement between the College and the faculty union covered the employment of the faculty and also provided for reductions. Essentially, the agreement gave the Board of Trustees the exclusive right to determine a reduction in the number of faculty employed by the College. The faculty association, however, had the right to make recommendations and agree to a mutually satisfactory process for the reduction.
 
 
 7
 In June of 1983, the College and various union bargaining representatives, including Taylor, signed a memo which detailed various criteria for the reduction. President Gannon directed the deans of the College's divisions to conduct program reviews in accordance with the agreed upon criteria and to recommend people for possible layoff. Later, Gannon assigned each division a share of the budget deficit to eliminate by reduction of staff. He also appointed a review committee, of which he was not a member, to assist the deans in applying the criteria in their program reviews.
 
 
 8
 Sam Kintzer was Dean of the Division of Arts and Sciences where Professors Arganian and Taylor taught. Dean Kintzer selected only three of the fourteen recommended criteria as most relevant to his division: (1) enrollment trends, (2) ratio of full-time to part-time faculty, and (3) personal evaluations and qualifications. He ranked all the programs in the division by percentage of enrollment decline over the three previous years and the ratio of full-time to part-time faculty. Instructors in the programs with the greatest decline and the highest ratio were then ranked by their performance evaluations. These evaluations had been conducted for several years and consisted of 60% administrative ratings and 40% student ratings. Dean Kintzer then determined which faculty members should be laid off. His recommendations included Professors Arganian and Taylor.
 
 
 9
 President Gannon did not substitute or alter any recommendations and forwarded them to the Board of Trustees for acceptance. The Board approved the layoffs on July 22, 1983, and notified all discharged faculty, including Arganian and Taylor. Subsequently, Arganian and Taylor accepted part-time employment with the College. On February 5, 1986, Taylor committed suicide, allegedly due to depression over his dismissal.
 
 
 10
 Several of the laid-off faculty, including Arganian and Taylor, filed grievances under the agreement alleging that the College's reduction in staff was "arbitrary, capricious and in bad faith." The grievances went to arbitration. The arbitrator determined that the College was subject to a covenant of good faith. The arbitrator found no arbitrary and capricious conduct and that the administration exercised good faith managerial judgment after duly considering all permissibly relevant factors.
 
 
 11
 After the arbitration decision, Professor Arganian and Professor Taylor's estate filed a four-count complaint alleging that President Gannon and the Board of Trustees violated 42 U.S.C. Sec. 1983 by abridging Taylor's first amendment rights, the due process rights of both, the Michigan Elliott-Larsen Civil Rights Act as to both, and the Michigan Wrongful Death Act as to Taylor.
 
 
 12
 The district court initially addressed the due process claims. As to procedural due process, the district court found that it must first determine whether a protected property interest exists. Both Arganian and Taylor claimed a protected property interest under the collective bargaining agreement in their continued employment and Arganian claimed an additional basis for a property interest as a tenured employee before the agreement went into effect. The district court found that the agreement controlled the employment relationship of both, as the agreement superseded any tenure rights Professor Arganian had.
 
 
 13
 After the district court assumed that Arganian and Taylor possessed a legitimate expectation of continued employment under the agreement, it then determined what due process was constitutionally required. The court found that the collective bargaining agreement provided procedural safeguards to protect the employees and provided for three types of discharge: just cause, non-renewal of contract, and reduction in staff, the method used to discharge Professors Arganian and Taylor. The district court agreed with the arbitrator that the agreement's procedural safeguards had been observed and that no material fact existed as to whether Arganian and Taylor had received all of their contractual rights under the grievance procedure.
 
 
 14
 The district court stated, however, that the critical issue was whether the requirements of constitutional due process were observed. The district court determined that the grievance procedure specified in the agreement satisfied the requirements of constitutional due process and thus concluded that there was no violation of procedural due process as to Arganian's and Taylor's protected property interests.
 
 
 15
 Professors Arganian and Taylor also claimed that they were deprived of their vocational liberty interests without due process. The district court found the allegations supporting this claim to be legally and factually insufficient to demonstrate that Arganian and Taylor had a definite range of opportunities no longer open to them. Lake Michigan College Federation of Teachers v. Lake Michigan Community College, 518 F.2d 1091, 1097-98 (6th Cir.1975).
 
 
 16
 As to substantive due process, the district court found that Arganian and Taylor had to show that the College's conduct was arbitrary, capricious, and without a rational basis. The district court held that the three criteria used by Dean Kintzer in determining layoffs had a rational basis and that the determination of a financial exigency was made in good faith, and thus the College did not violate the substantive due process rights of Arganian and Taylor.
 
 
 17
 The district court then examined the claim that Taylor's first amendment rights were violated because he was laid off due to his criticism of President Gannon and his union activity. The court assumed that Taylor's conduct was constitutionally protected, but found there was no evidence that Taylor was dismissed because of his criticism and union activity. Thus, the court concluded that the protected conduct was not a substantial or motivating factor for the adverse action. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
 
 
 18
 Additionally, the district court, relying on Poe v. Haydon, 853 F.2d 418 (6th Cir.1988), held that President Gannon and the Board of Trustees were also entitled to summary judgment on the federal claims on the basis of qualified immunity. The court determined that there was insufficient evidence to create a genuine issue as to the truth of the allegations that Gannon and the Board committed acts that violated clearly established law. Accordingly, the court found that the undisputed facts showed that reasonable officials in similar positions could have believed their conduct to be lawful.
 
 
 19
 Both claims under the Michigan Wrongful Death Act and the Michigan Civil Rights Act were pendent state claims and were therefore dismissed by the district court because it had found that summary judgment was appropriate on the federal claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Because these state law issues were not raised on appeal and because of our resolution of the case, we need not consider them now.
 
 
 20
 The primary issue on appeal is whether Professors Arganian and Taylor were denied procedural due process. Arganian and Taylor's estate contend that under the collective bargaining agreement Arganian and Taylor had a protected property interest in their continued employment as professors at a public college and that Arganian had an additional interest as a tenured professor. They argue that due process requires that they receive a hearing on the reason for their discharge, in this case on whether there was a legitimate financial exigency facing the College, and on why they were selected for discharge. The professors claim that they were not given the reasons for their selection until after they were dismissed and that there was never a hearing on the existence of the financial exigency.
 
 
 21
 We engage in a two-step analysis when resolving procedural due process issues. We initially determine whether a protected property or liberty interest exists and then determine what procedures are required to protect that interest.
 
 
 22
 Public college professors have a constitutionally protected property interest in their teaching positions when they have a legitimate expectation of continued employment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A professor subject to a continuing contract has a legitimate expectation of continued employment and, therefore, has a protected property interest. Whitsel v. Southeast Local School District, 484 F.2d 1222, 1229 (6th Cir.1973), citing Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Because the collective bargaining agreement in this case provided for continuing employment, we find that both Professor Arganian and Taylor had a protected property interest which could only be terminated in accordance with due process under the fourteenth amendment.
 
 
 23
 In addition, a public college professor with tenure also has a legitimate expectation of continued employment and, therefore, has a property interest which is protected by due process. Roth, 408 U.S. at 576, 92 S.Ct. at 2701, citing Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The district court incorrectly determined that Arganian's tenure rights had coalesced into the rights of continuing contract. There is simply no legal foundation for this holding by the district court. Thus, Professor Arganian had an additional basis for a protected property interest as a tenured employee of the College.
 
 
 24
 Given that both Arganian and Taylor possessed a protected property interest in their continued employment with the College, we turn now to determine what due process was constitutionally required to protect that interest. The law is quite clear on this question. Professors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds. Whitsel, 484 F.2d at 1228, citing Perry, 408 U.S. 593, 92 S.Ct. 2694, and Slochower, 350 U.S. 551, 76 S.Ct. 637.
 
 
 25
 The College claims that Professors Arganian and Taylor were properly dismissed under a reduction in staff made necessary by a financial exigency. Yet neither Arganian nor Taylor were told the reason for their dismissal prior to their discharge. The professors did not receive a hearing on the existence of the financial exigency and were not informed of the criteria used to select them for discharge until the arbitration proceedings; the arbitrator never decided the issue of financial exigency. Thus, Professors Arganian and Taylor never had a sufficient opportunity to challenge the grounds for their dismissal, including the existence of the alleged financial exigency.
 
 
 26
 The district court found that the grievance procedure specified in the collective bargaining agreement satisfied the requirements of constitutional due process and, therefore, found that summary judgment was appropriate on the procedural due process claim. We, however, are not completely satisfied that Professors Arganian and Taylor were afforded all the process due them. Because they never had the opportunity to challenge the grounds for their dismissal prior to their discharge, we believe there is a sufficient question of the validity of the procedural due process provided to them to warrant an evidentiary hearing.
 
 
 27
 As to the substantive due process claim, the issue is whether there was a rational basis for the layoffs. Arganian and Taylor contend that the purpose of the June 1983 memo was to set forth criteria for program review, not discharge of individual faculty. They also assert that because Dean Kintzer selected only three of the fourteen criteria recommended in the memo, their layoffs lacked a rational basis. Because the professors' contentions must be taken as true, we find that they have presented a material issue as to whether there was a rational basis. In addition, an evaluation of a "good faith" determination of financial exigency is needed to resolve this issue, which necessarily requires a determination of whether exigency in fact existed. Thus, an evidentiary hearing is also appropriate on the substantive due process issue.
 
 
 28
 Accordingly, we reverse the district court's grant of summary judgment on the procedural and substantive due process issues and remand for an evidentiary hearing on those issues.
 
 
 29
 Such other issues raised in this appeal need not be addressed now. They may be considered by the district court as it may deem appropriate.
 
 
 30
 The judgment of the district court is reversed.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation