NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0482n.06

Nos. 17-6070/6141/6152

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARCIA KELLEY; IDA STEINBERG; LAVERNE JACKSON; PAUL BANKS; DALE THOMPSON, | ) ) ) | **FILED**<br>Sep 26, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants/Cross-Appellees (17-6141/6152), | ) ) | |
| Plaintiffs-Appellees (17-6070), | ) ) | |
| MEMPHIS-SHELBY COUNTY EDUCATION ASSOCIATION, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| Plaintiff-Appellant/Cross-Appellee (17-6141/6152), | ) ) | |
| Plaintiff-Appellant (17-6070), | ) ) | |
| v. | ) ) | |
| SHELBY COUNTY BOARD OF EDUCATION; DORSEY E. HOPSON, II, | ) ) ) | |
| Defendants-Appellees/Cross-Appellants (17-6141/6152), | ) ) | |
| Defendants-Appellees (17-6070). | ) ) | |

**BEFORE:** BOGGS, CLAY, and ROGERS, Circuit Judges.

**BOGGS, Circuit Judge.** This § 1983 case arises from an employment dispute in the Memphis, Tennessee area school system. The Memphis-Shelby County Education Association ("M-SCEA") and five tenured teachers who were excessed from their jobs as part of a reduction in force ("RIF") in June 2014 sued the Shelby County Board of Education ("the Board") and Superintendent Dorsey Hopson ("the Superintendent"). On cross-motions for summary judgement, the district court held that the "excessing" process that implemented layoffs violated Tennessee's Teacher Tenure Act (the "Tenure Act"). Tenn. Code. § 49-5-511(b). However, the court also held that these Tenure Act violations did not constitute a violation of the Due Process Clause of the Fourteenth Amendment because the teachers did not have a reasonable expectation

of continued employment during a RIF and therefore did not have a constitutionally protected property interest. In a companion case, *Memphis-Shelby County Education Association v. Shelby County Board of Education, et al.*, No. 17-6070, M-SCEA filed a motion to join approximately 200 plaintiffs to this action. The district court denied the joinder motion, holding that it was unreasonable and untimely. M-SCEA appealed. We affirm the district court's rulings in both cases.

## I

In 2013, the Memphis City Schools merged with the Shelby County Schools (SCS). In response, six municipalities within the merged school system formed their own independent school districts, taking thousands of students and over 1,908 teaching positions away from SCS, resulting in a considerable projected decline in SCS student enrollment after the 2013-14 school year. Due to this projected shortfall, SCS needed to reduce the number of teachers on its payroll for 2014-15. After retirements and the hiring of new teachers, ultimately only 232 teachers were laid off.

To reduce the number of teaching positions, SCS instituted an "excessing" process or RIF that is being challenged in this case. The Board approved the general reduction in force, without calculating any specific number of positions or specific positions to be eliminated. Instead, the Board delegated those duties to the Superintendent and the school principals. The SCS Budget Office provided system-wide enrollment numbers, calculated the number of teaching positions allowed at each school, and gave that information to the school principals, who then recommended which teaching positions should be eliminated.

The school principals' decisions were submitted to the SCS Human Resources Department for review and approval. Then the principals informed the affected teachers that their positions

were being abolished. If the excessed teachers wanted to keep working for SCS, they had to reapply for positions at any SCS schools that had vacancies. If excessed teachers could not find a new SCS position by June 15, 2014, the Superintendent sent a letter informing them that they would be officially laid off on June 30, 2014 and put on a preferred "list of reemployment" ("the List") pursuant to Tenn. Code § 49-5-511(b)(3). School principals were not required to prefer tenured teachers over non-tenured teachers, or to afford special treatment to teachers on the List. Instead, a teacher's effectiveness and qualifications were the main factors used to determine whether a teacher was re-employed. All five teachers in this case did not find a position before June 15, 2014, were "excessed," and were placed on the List. The following litigation ensued.

## II

On August 4, 2014, Plaintiff Marcia Kelley, an excessed English teacher, filed a complaint in Tennessee state court against the Board and the Superintendent. Kelley was joined by the Memphis-Shelby County Education Association ("the M-SCEA") "on behalf of and for the benefit of its similarly situated professional employee members." An amended complaint was filed August 18, 2014, adding individual plaintiffs Ida Steinberg, a French teacher; Laverne Jackson, a cosmetology teacher; and Paul Banks, a history teacher, all of whom had been excessed. The teachers and the M-SCEA (hereinafter jointly referred to as the "Teachers") sought a declaratory judgment under Tenn. Code §§ 29-14-101 *et seq*., which states the statutory rights of tenured teachers and the corresponding statutory obligations of the Board governing assignment and transfer of teachers, and the rights of tenured teachers. (R.1-2, ID# 10) The Teachers brought statutory claims for wrongful deprivation of their legitimate expectation of continued employment under tenure law (R.1-2, ID# 23). They also brought a claim under the Fourteenth Amendment

for depriving them of their property interests in continued employment without due process. (R.1-2, ID# 10).

Defendants (hereinafter jointly referred to as "the Board") removed the case to federal district court on August 14, 2014, based on federal-question jurisdiction under 28 U.S.C. § 1331. On August 29, 2014, the district court issued a scheduling order setting November 28, 2014, as the deadline to join parties or amend pleadings. No joinder motions were filed. The parties filed cross-motions for summary judgment on August 31, 2015. By agreement of the parties, the case of Dale Thompson, who was a guidance counselor at an underperforming high school where all faculty positions were declared vacant while she was on paid medical leave under the Federal Medical Leave Act, was consolidated with this case on November 25, 2015.

On August 3, 2016, the district court entered an order denying the Board's motion for summary judgment and granting the Teachers' motion for summary judgment, holding that the Board had improperly delegated its tenure authority under state law governing the excessing of teachers. (R. 70, ID# 784). The district court also determined that the Board's actions did not violate the Due Process Clause of the Fourteenth Amendment or the FMLA. Immediately after this order, the Board passed a resolution dated October 5, 2016, which ratified *post hoc* the 2014 excessing decisions made by the SCS Superintendent and the school principals. On October 13, 2016, nearly two years after the deadline to join parties and more than two months after the district court rendered its final decision on liability, the M-SCEA moved to join approximately 200 plaintiffs to the action. Nowhere did the M-SCEA claim that any of the 200 individual members of M-SCEA had assigned their claims to M-SCEA or granted M-SCEA a power of attorney. On January 10, 2017, the district court denied the joinder motion, holding that it was unreasonable and untimely. (R. 70, ID# 786)

On August 24, 2017, the district court entered an order denying reconsideration of its summary-judgment order and calculating damages. (R. 89) The district court held that each named plaintiff was entitled to full back pay "without offset" for the period beginning on July 1, 2014 and ending on the earlier of the date of the Board's resolution or the date that a particular excessed teacher obtained alternative employment within the school system. (R. 89, ID# 951) Plaintiffs Kelly and Steinberg were rehired on October 13, 2014 and awarded back pay of $17,171. Plaintiff Burks was re-hired at the beginning of the 2015-16 school year and awarded back pay of $75,457. Plaintiff Jackson, who was never rehired, was awarded back pay of $112,719. Plaintiff Thompson's case is unique, as she was on approved FMLA leave when all the positions at her school were abolished, requiring every teacher to reapply. She was added as a party to this case with the consent of both parties. Thompson, who also was never rehired and elected to retire, was awarded back pay of $174,582.

The court held the Teachers were not entitled to any relief beyond back pay because, based on the plain language of the statute, a plaintiff "is not entitled to recover for career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution." (R. 89, ID# 951) Finally, the district court held that no plaintiff was entitled to reinstatement "at this time" because the Board's resolution foreclosed that avenue of relief. The Teachers appealed (No. 17-6141) and the Board cross-appealed (No. 17-6152). The Teachers argue that the district court's opinion against the Board for violating the Tenure Act's non-delegation principle should be upheld, but that the case should be remanded as to damages because the district court erred in limiting the scope of damages for back pay by accepting the Board's *post hoc* 2016 resolution. They also argue that the district court erred in holding that tenured teachers do not have a constitutionally protected property interest in continued employment when jobs are eliminated through a RIF. On cross-

appeal, the Board argues that the district court erred in holding a) that the Board's RIF excessing process violated the Tenure Act and b) that the Board's *post hoc* ratification of SCS employment decisions did not cure damages already caused by the Board's illegal delegation of power.

**III**

The first issue the Board raises on appeal is whether the Board's process for excessing tenured teachers violated the Tenure Act. The district court held that the Board's excessing process violated the Tenure Act's non-delegation principle, as decisions to hire and fire tenured teachers require the kind of policy discretion and judgment that is nondelegable. The district court determined that the Board improperly delegated that power to the SCS Superintendent and school principals. We agree.

Under Tennessee law, school boards are responsible for conferring tenure and dismissing tenured teachers. Tenn. Code § 49-2-203(a)(1); § 49-5-511. (R. 57, ID# 712) The legislature has explicitly provided that superintendents have authority to hire, fire and transfer all personnel, *except* for tenured teachers. Tenn. Code § 49-2-301(b)(1)(EE). Tenn. Code § 49-5-511 sets forth the process for dismissing or suspending all teachers, including tenured teachers. Subsection (a) covers dismissal for cause, Tenn. Code § 49-5-511(a), while subsection (b) covers dismissal based on a reduction in force.[1] Tenn. Code § 49-5-511(b)(1). When a RIF becomes necessary "because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such teachers . . . ." Tenn. Code § 49-5-511(b)(1). Further, "[t]he board shall give the teacher . . . . written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary." Tenn. Code § 49-5-511(b)(2). Here, it is undisputed that beyond authorizing the

---

[1] The legislature amended Tenn. Code 49-5-511 (2012) effective July 1, 2014. The district court held the issue of non-delegation was not affected by these changes and that the analysis remained the same under either version.

overall reduction in force in 2014, the Board took no further action in the excessing process. It neither helped determine which teachers were to be dismissed, nor provided notice to the laid-off teachers. (R.57, ID# 713)

In Tennessee, the general rule is that municipal authorities may delegate ministerial or administrative duties, but they may not delegate their legislative duties, duties that require the exercise of discretion and judgment. *City of Rockwood v. Cincinnati, N.O. & T.P. Ry. Co.*, 22 S.W.2d 237, 240 (Tenn. 1929). Municipal bodies that make public policy have a nondelegable duty to the public to make such policy. (R.57, ID# 714) Local elected bodies are "charged with a public trust and the faithful performance of their duties; and the public is entitled to the judgment and discretion . . ." exercised by their elected officials. *Lotspeich v. Morristown*, 207 S.W. 719, 722 (Tenn. 1918). In Tennessee, school boards are local, elected bodies. Tenn. Code § 49-2-201 (a)(1). A member of a county board of education holds a county office within the meaning of Article VII, Section 2 of the Tennessee Constitution. *Tenn. Op. Atty. Gen*. No. 10-88 (2010 Tenn. AG LEXIS 94).

Tenure is the public policy of the Tennessee legislature, designed to provide stability in educational programs and teacher employment, and to protect teachers from being fired due to malice or political differences. *State v. Yoakum*, 297 S.W.2d 635, 638 (Tenn. 1956). The legislature expressly gave the power over tenure decisions to the local boards of education. The legislature did not intend for these duties to be delegated and did not delegate these duties to superintendents or school principals in any other legislation. In construing the 1987 version of the Tenure Act, the Tennessee Supreme Court held that a Board of Education could not delegate determinations of a tenured teacher's fitness for reemployment to a superintendent. *Randall v.*

*Hankins*, 733 S.W.2d 871, 875 (Tenn. 1987); *see also Lee v. Franklin Special Sch. Dist. Bd. Of Ed.*, 237 S.W.3d 322, 335-36 (Tenn. Ct. App. 2007).

For all these reasons, the Board violated the non-delegation principles of the Tenure Act by having the Superintendent and school principals make excessing decisions. We recognize the practical difficulties with applying this principle in a large school district such as SCS. At oral argument, the Teachers took the non-delegation principle to an extreme, arguing that each individual employee's evaluation must be made by the Board before a decision as to that employee's fate. While the Board's power to make tenure decisions is nondelegable, that is not the same as requiring a system-wide assessment by the Board of each teacher to be excessed. It is permissible for initial individual evaluations to be made at the school level, with the Board approving the evaluation process and guidelines, making the ultimate employment determinations, and providing notice of termination to the laid-off teachers.

Plaintiffs' cross-appeal raises the question of whether the Board cured its Tenure Act violation by passing a *post hoc* resolution approving the improperly delegated excessing decisions made by the SCS Superintendent and the school principals. In the district court, the Teachers argued that the Board's October 2016 resolution ratifying the 2014 excessing decisions *nunc pro tunc* was just a litigation tactic to try to limit damages, coming more than two years after the fact, and immediately after the district court held that the Board had violated the nondelegable provisions of the Tenure Act. The district court, while acknowledging that "the Board may not now snap its fingers and make its unlawful conduct disappear" held that it was "entirely appropriate for the Board to exercise its statutory authority by serving as the final decision maker as to [the] Plaintiffs' excessing." (R. 89, ID# 949) The district court held that the October 2016 resolution limited the scope of damages by establishing the time period for which the Board would

be held liable for the previously illegal actions--from the date of the illegal excessing (July 1, 2014) to the date of the Board's ratification (October 5, 2016).

The Board's *post hoc* resolution, two years after the fact, cannot cure the harm caused by the improper layoffs and loss of jobs for the individual teachers. However, once the district court held that the Board had violated its nondelegable duties, the Board took immediate action to correct its violation, creating a resolution to ratify the excessing decisions. In so doing, the Board was in effect taking ultimate responsibility for the excessing decisions, bringing the previously unlawful terminations into compliance with Tennessee law. The Board was no longer in violation of the Act, and the resolution limited the scope of damages available to the Teachers. However, the teachers were entitled to damages that occurred between the date of excessing and the resolution (or the earlier obtaining of a new job), because as the district court recognized, that harm cannot be cured.

## IV

The Teachers argue that tenured teachers have a constitutionally protected property interest in their continued employment under *Cleveland Bd. of Educ. v Loudermill*, 470 U.S. 532 (1985). The question in *Loudermill* was "what pretermination process must be accorded a public employee who can be discharged only for cause." *Id*. at 535. The *Loudermill* court found a property interest in Ohio's "classified civil servant" statute, Ohio Rev. Code § 124.11, which provided that such employees could only be terminated for cause. *Ibid*; see also Ohio Rev. Code § 124.34. Recognizing that property interests in continued employment are created by state law, *Loudermill* held that the federal "Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Id*. at 541. The right to due process "is conferred, not by legislative grace, but by constitutional

guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Ibid*.

Applying *Loudermill*, the question is whether, under the Tennessee Tenure Act, a tenured teacher has a constitutionally protected property interest in continued employment when a teacher is dismissed pursuant to a reduction in force. In *Johnston-Taylor v. Gannon,* 907 F. 2d 1577 (6th Cir. 1990), two community college professors filed wrongful-discharge actions claiming that their due-process rights (based on a collective-bargaining agreement and tenure) were violated when they were denied a hearing on the necessity of the layoff under which they were terminated.

*Johnston-Taylor* held that "[p]ublic college professors have a constitutionally protected property interest in their teaching positions when they have a legitimate expectation of continued employment" created by their collective-bargaining contract and by the tenure status of one of the professors. *Id*. at 1581. It also held that "[p]rofessors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds." *Ibid*. Because the professors never had the opportunity to challenge the grounds for their dismissal, the alleged financial exigency, the court held that there was "a sufficient question of the validity of the procedural due process provided to them to warrant an evidentiary hearing." *Id.* at 1582.

*Johnston-Taylor* held that a constitutionally protected property interest in continued employment exists for tenured college professors, notwithstanding their dismissal under a RIF made necessary by a financial exigency, where the professors challenged not only the need for a

RIF, but also whether the professors individually met whatever criteria were used to select them and not others. *Id*. at 1581. The Teachers argue that *Loudermill* and *Johnston-Taylor* create a property interest in employment in the school system, not just in a specific position. (Teacher Br. 27) This position does not comport with other Sixth Circuit cases which hold that state employees have no protected property interest in their continued employment in the face of layoffs. *Gragg v. Somerset Tech. College*, 373 F.3d 763 (6th Cir. 2004); *Riggs v. Kentucky*, 734 F.2d 262 (6th Cir. 1984).

In *Riggs*, 42 laid-off Kentucky merit-system employees filed § 1983 claims for due-process violations of constitutionally protected property rights. The *Riggs* court held that the claimed statutory right to employment in Kentucky was specifically limited, allowing for layoffs for reasons of lack of funds or work or abolition of a position. The statute governing layoffs contained no requirement of individual cause. *Riggs*, 734 F.2d at 265. The court held that Riggs failed to establish the deprivation of a constitutionally protected property interest in not being subject to a reorganizational layoff without individual cause and distinguished discharges which required such cause. *Ibid*. Citing *Riggs*, the *Gragg* Court likewise held that a laid-off government employee has no constitutionally protected right in continued employment where an employee is laid off because the position is abolished, and dismissal is not based on cause. *Gragg*, 373 F.3d at 769.

A protected property interest is defined by the terms of the state document creating the interest. *Gragg*, *Riggs*, and *Johnston-Taylor* are all consistent with this principle. The statute defines the contour of the interest. Here, there are two competing versions of the Tenure Act, the 2012 version and the 2014 version, which went into effect on July 1, 2014. In its liability opinion, the district court states that the teachers were laid off on June 30, 2014, a date covered by the

2012 statute. (R.57 ID# 702) But in its damages opinion, the district court refers to July 1, 2014 as the start date for damage calculation.  (R.89 ID# 940)

The 2012 version of the Tenure Act states:

> **(1)**   When it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the **board shall be empowered to dismiss** such teachers or nonlicensed employees **as may be necessary**. However, the director of schools and the board of education are expressly forbidden to use abolition of a position as a method of avoiding dismissal charges against a teacher and the accompanying due process rights attaching to the status of tenure.
>
> **(2)**   The board shall give the teacher or nonlicensed employee **written notice of dismissal** explaining fully the circumstances or conditions making the dismissal necessary.
>
> **(3)  A tenured teacher** who has been dismissed because of abolition of a position *shall be* **placed on a list for reemployment in the first vacancy the teacher is qualified by training and experience to fill**. Nothing in this subsection (b) shall be construed to deprive the director of schools of the power to determine the filling of such vacancy on the basis of the director of school's evaluation of the teacher's competence, compatibility and suitability to properly discharge the duties required for the vacant position considered in the light of the best interest of the students in the school where the vacancy exists. The teacher's most recent evaluations may be a factor in such determination.
>
> **. . .**
>
> **(4) (B)** The teacher receiving the notification shall retain the right to stay on the preferred list for reemployment by notifying the director of schools in writing by April 15 of each subsequent year of the desire to stay on the preferred list for reemployment.

Tenn. Code § 49-5-511(b)(1-4) (2012) (emphasis added). This statutory language in no way conditions the abolition of a position on the individual circumstances of the employee.

The 2014 version of the Tenure Act provides that the Board is empowered to dismiss teachers when there is a decrease in enrollment "based on their level of effectiveness determined by evaluation . . . ." Tenn. Code § 49-5-511(b)(1).  The requirement in subsection (b)(2) of written

notice explaining the circumstances of the dismissal is the same in the 2012 and 2014 versions. *See* § 49-5-511(b)(2). But subsection (b)(3) is significantly different in the 2012 and 2014 versions. In 2012, (b)(3) applied only to tenured teachers, and provided that a tenured teacher who has been dismissed "shall be placed on the list for reemployment." In 2014, (b)(3) applies to any teacher, tenured or not, and only allows teachers to be placed on the reemployment list if they receive sufficiently high evaluations. Tenn. Code § 49-5-511(b)(3) (2014). It is at least arguable that this provision triggers a property interest. Further, the right to remain on the List is limited, ending after a "teacher rejects four (4) bona fide offers of reemployment for comparable positions within the LEA." § 49-5-511(b)(4) (2014).

The Teachers are not clear on appeal as to which version should apply. On the one hand, the 2012 version is slightly more favorable to the Teachers in requiring that teachers "shall" be placed on the List. On the other hand, the Teachers argue that under the 2014 version they had a protected property interest in continued employment because that law provides that placement on the List would turn on the kind of individualized merit evaluations that can trigger due-process protections for tenured employees. In contrast, RIFs such as those in *Gragg* and *Riggs* create no individual protected property interest.

The 2012 version of the Tenure Act applies in this case. All excessing decisions were made prior to July 1, 2014. The Techers had no reasonable expectation to the 2014 statutory rights because the excessing happened in early 2014 and those rights did not exist then. Under the 2012 version, the Teachers had no property interest or a reasonable expectation that they would not be excessed based on their individual merits, qualities, circumstances, or performance. The 2012 version did not place any limits on how the layoffs in the event of a RIF should occur – only that the decisions should be made by the Board. The teachers accordingly had no protected property

interest. Because the 2012 version of the Act applies, we need not determine whether the language in the 2014 Act requiring the Board to consider teacher evaluations created a "cause" requirement.

**V**

As to the question of joinder of 200 new individual plaintiff teachers, the district court did not abuse its discretion in denying joinder based on untimely filing. And, for the reasons set forth above, we AFFIRM the district court's holdings in all cases consolidated on this appeal.