NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0578n.06

Case No. 20-2114

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 13, 2021
DEBORAH S. HUNT, Clerk

DIANNE DOWN,

    Plaintiff-Appellant,

v.

ANN ARBOR PUBLIC SCHOOLS; CYNTHIA RYAN; DAVID COMSA,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Dianne Down appeals the district court's dismissal of her claims related to her employment at Ann Arbor Public Schools. The district court entered judgment on the pleadings for some of her claims and granted summary judgment to Ann Arbor Public Schools, Cynthia Ryan, and David Comsa on the rest of her claims. We affirm.

I.

Down was a high school teacher at Ann Arbor Public Schools, where she started in 1999. In 2013, she was placed on paid administrative leave pending an investigation into allegations that she verbally abused her students. Down was also instructed to undergo a psychological examination at that time to determine whether "she was mentally fit for the professional duties associated with teaching at the high school level." *Down v. Ann Arbor Pub. Schs.*, No. 14-10086, 2015 U.S. Dist. LEXIS 128982, at *2 (E.D. Mich. Sept. 25, 2015). She sought an injunction in

federal court prohibiting Ann Arbor Public Schools and its (since retired) executive director of human resources, Cynthia Ryan, from requiring her to submit to this examination. Down asserted claims under the Fourth Amendment and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1101 *et seq. Id.* at *1–2. The district court granted summary judgment to Ann Arbor Public Schools and Ryan, denying the injunction and dismissing Down's claims,[1] *see id.* at *16, and Down's examination was conducted in October 2015.

Although the examination results revealed no basis to keep Down from teaching, Ann Arbor Public Schools placed Down on another paid administrative leave.[2] During this time, in June 2016, Down applied for a renewal of her teaching certificate. She alleged that Ryan refused to certify the professional development hours she needed for a valid teaching certificate in Michigan. *See* Mich. Admin. Code R. 390.1129b(2). Down was concerned that if she lost her teaching certificate, she would not have the right to appeal a discharge or demotion or receive a hearing as to her tenure. *See* Mich. Comp. Laws §§ 38.121, 38.71(4).

In October 2017, Down filed her current lawsuit against Ann Arbor Public Schools and Ryan. She amended the complaint in March 2018, adding Ann Arbor Public Schools' deputy superintendent, David Comsa, as a defendant.[3] She asserts multiple violations of her civil rights and seeks injunctive and monetary relief. Her claims include: (1) Ann Arbor Public Schools'

---

[1] The district court found it reasonable for Ann Arbor Public Schools to require Down to undergo a psychological examination because of her "long history of issues" and "long history of parent complaints and student difficulties." *Down v. Ann Arbor Pub. Sch.*, 29 F. Supp. 3d 1030, 1037 (E.D. Mich. 2014). The district court then held that the examination was not an unreasonable search under the Fourth Amendment and Down did not suffer from a disability recognized by the PWDCRA. *Down*, 2015 U.S. Dist. LEXIS 128982 at *12–13, 16.

[2] Down testified that she did not learn of these results until the Spring of 2016.

[3] Down alleges that a representative from Ann Arbor Public Schools contacted the Michigan Department of Education (MDE), expressing concern about the renewal of Down's teaching certificate, and the department conducted an audit into her verifications of attendance at professional development courses. The MDE ultimately concluded that Down completed the requisite 150 hours of professional development and took no action on her teaching certificate that was renewed, but it did note that Down's application for renewal contained inaccurate information. (Letter from the MDE, R. 16-1, PageID 135.)

requirement for her to undergo the psychological examination violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; (2) Defendants retaliated against her in violation of the ADA, PWDCRA, and the First Amendment by placing her on administrative leave, threatening a tenure action against her, refusing to allow her to return to teaching, delaying production of the examination results, delaying her access to records of her continuing education, refusing to offer professional development hour opportunities, and refusing to verify her professional development hours; and (3) Defendants refused to submit signed verification forms of her professional development hours to the MDE, putting her teaching certification at risk of suspension or revocation, in violation of the Due Process and Equal Protection clauses of the Fourteenth Amendment and 42 U.S.C. § 1983. Defendants moved for judgment on the pleadings and to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(c) and 12(b)(1) respectively.

The district court partially granted Defendants' motion for judgment on the pleadings, leaving only Down's retaliation claims for damages against Ann Arbor Public Schools under the PWDCRA and ADA and her retaliation claim for damages against all Defendants under § 1983 based on an alleged violation of her First Amendment rights.[4] The district court held that Down was barred by issue and claim preclusion from bringing an ADA claim regarding her alleged unlawful examination because of her first lawsuit. It then held that there is no individual liability under the ADA—which Down conceded—and, because Michigan courts have found the PWDCRA and ADA to be similar, the PWDCRA. However, the district court concluded that although Down could not pursue her ADA and PWDCRA retaliation claims against Ryan and Comsa, she could pursue them against Ann Arbor Public Schools, because government immunity

---

[4] The district court denied Defendants' motion to dismiss Down's equal-protection and due-process claims for lack of subject matter jurisdiction.

did not apply. It also held that Down sufficiently pleaded both an adverse action as the basis for her retaliation claims and that her claims were not time-barred because they were based on her second administrative leave that started in March 2016. Regarding her remaining § 1983 claims, the district court held that her request for injunctive relief was moot, because her teaching certificate was renewed. It also held that she did not state a claim for an equal-protection violation, because the Supreme Court has held that a plaintiff may not bring a "class-of-one" claim in the public employment context. Lastly, it held that Down did not state a claim for a due-process violation, because Defendants' failure to certify professional-development hours for her teaching certificate did not rise to the level of a constitutional violation. After the discovery period concluded, Defendants moved for summary judgment on the remaining retaliation claims.[5]

The district court granted summary judgment for Defendants on Down's remaining claims. It held that Down did not establish a prima facie case of retaliation, because she did not file a timely response to Defendants' motion. It further analyzed the retaliation claims, though, and stated that even if Down could establish a prima facie case, Defendants articulated legitimate, non-retaliatory, and non-pretextual reasons for their actions. Down timely filed a notice of appeal from the district court's opinion and order granting, in part, and denying, in part, Defendants' motion for judgment on the pleadings and motion to dismiss, as well as the district court's opinion and order granting Defendants' motion for summary judgment.[6] (Notice of Appeal, R. 64, PageID 761.)

---

[5] Defendants also moved for sanctions for Down's alleged failure to make the mandatory disclosures under Federal Rule of Civil Procedure 26 or file a witness list, but the district court noted their motion for sanctions within their motion for summary judgment was procedurally improper.

[6] Down does not appeal the dismissal of her ADA challenge to the psychological examination. (Appellant's Br. at 6–7.)

II.

We review a district court's entry of judgment on the pleadings de novo. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). "[W]e take as true 'all well-pleaded material allegations.'" *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (quoting *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). Legal conclusions and conclusory allegations will not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The motion [for judgment on the pleadings] is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley*, 751 F.3d at 733 (alteration in original) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)).

We also review a district court's grant of summary judgment de novo. *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of evidence supporting one or more essential elements of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968)). "Even where a party 'offer[s] no timely response to [a] [ ] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c).'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (alterations in original) (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.1979)).

A.    EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  However, the United States Supreme Court has found that this "class-of-one" theory of equal protection "is simply contrary to the concept of at-will employment," *id.* at 606, and "has no application in the public employment context," *id.* at 607.  *See also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 n.15 (6th Cir. 2012) ("The Supreme Court recently held that class-of-one equal-protection claims cannot be raised in the public-employment context.").

Down argues, though, that the district court erred in entering judgment on the pleadings on her "class-of-one,"[7] equal-protection claim because Defendants' decision was nondiscretionary.  Specifically, she contends that Defendants' refusal to certify her prior attendance at professional development courses that Ann Arbor Public Schools offered was a decision by "a regulated public body subject to the general supervision of MDE"—and not an employment decision.  (Appellant Br. at 24.)  She further argues that the decision was based on "the objective record of whether courses were completed," so it was not subjective.  (*Id.* at 25.)  We find these arguments unpersuasive.

"[E]mployment decisions based on characteristics unique to an individual," like decisions on whether to certify an individual teacher's hours "are by their nature subjective and

---

[7] Down does not contest that she is bringing a "class-of-one" theory of equal protection.  (Appellant Br. at 21.)

discretionary." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 539 (6th Cir. 2008). And Down has not provided any authority to support her proposition that Ann Arbor Public Schools is *required* to certify her hours to the MDE. The record instead shows that Defendnats made an individualized decision based on their review of Down's certification records. *Engquist* is clear: "[W]e have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." 553 U.S. at 605. Down's equal-protection claim fails.

B.      DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a due-process claim, Down must first show that she has "a protected property or liberty interest." *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (quoting *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990)). But "[t]he Constitution does not create or define property interests[.]" *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). So the courts look to "independent sources of entitlement, such as state law," *id.* at 577. *See also id. at* 578 ("The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause." (cleaned up)). After establishing possession of a property interest protected under the Constitution, Down must show she was deprived of this protected interest without the process she was due. *Id.* at 577.

Down argues that the district court erred in entering judgment on the pleadings on her due-process claim, because Defendants "scheme[d] to deprive her of her teaching certificate."

(Appellant Br. at 29.) She claims that Defendants caused the MDE's audits of her professional development hours and refused to certify those hours, threatening her teaching certificate.[8] However, Down did not allege a protected property interest. Down points to no state law or contract entitling her to a verification of her professional development hours. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435–36 (6th Cir. 2005) (holding that Mich. Admin. Code R. 436.1403(1)'s express entitlement of hours of operations to liquor license holders was a constitutionally-protected property interest); *see also EJS Props., LLC*, 698 F.3d at 857 ("[A] party cannot have a property interest in a discretionary benefit, even if that discretion had never been exercised previously."). So Down's due-process claim also fails.

C.     RETALIATION CLAIMS

When a plaintiff presents only circumstantial evidence of retaliation in violation of the ADA or PWDCRA, as is the case here, we apply the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012). Under the *McDonnell Douglas* framework, Down must first establish a prima facie case of retaliation. *See* 411 U.S. at 802. If she can establish a prima facie case, the burden shifts to Defendants "to proffer some legitimate, non-retaliatory reasons" for the adverse action. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015). If Defendants make this showing then the burden shifts back to Down to show that the proffered reasons were a pretext for retaliation. *Id.*

---

[8] Down also argues that Defendants told her that she needed more hours than she did and denied her access to obtain these hours while on leave. (Appellant Br. at 31–32.) But she did not raise these arguments before the district court, so we will not consider them here. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 243–45 (6th Cir. 1991); *see also* Plaintiff's Am. Compl., R. 12, PageID 21–22; Resp. to Mot. to Dismiss, R. 22, PageID 232–34, 237–38; Resp. to Mot. to Dismiss Nunc Pro Tunc Per 12/4/2018 Order, R. 26, PageID 324–26.

To establish a prima facie case of retaliation in violation of the ADA, *see* 42 U.S.C. § 12203(a), and PWDCRA, *see* Mich. Comp. Laws § 37.1602(a), Down must demonstrate that (1) she was engaged in a protected activity, (2) this activity was known by Defendants, (3) Defendants took an employment action adverse to Down, and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (stating the standard for ADA retaliation claims); *Aho v. Dep't of Corr.*, 688 N.W.2d 104, 108 (Mich. Ct. App. 2004) (stating the standard for PWDCRA retaliation claims); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) ("The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim.'" (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002)). And for her First Amendment retaliation claim, Down must show that "(1) [s]he engaged in constitutionally protected speech or conduct; (2) [Defendants] took an adverse action against h[er] that would deter an ordinary person from engaging in that conduct; and (3) there is a causal connection between elements one and two. *Rorrer*, 743 F.3d at 1047 (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

Down did not file a timely response to Defendants' motion for summary judgment,[9] so we turn to the "portions of the record submitted by" the Defendants to see if Down can first establish a prima facie case. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 630; *but see Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) ("[We] will not entertain on appeal factual recitations

---

[9] Defendants moved for summary judgment on March 3, 2020. Down filed a motion for an extension of time on the day her response was due (March 24). The district court granted her motion, giving her the additional seven days she asked for. On May 6, Down brought a second motion for an extension of time. The district court again granted her motion, giving her the additional five days she requested. Down did not file her response to Defendants' motion for summary judgment until May 27, which the court did not accept.

not presented to the district court any more readily than [we] will tolerate attempts to enlarge the record itself."). The district court and Defendants focused on the causation element of a prima facie retaliation case under the ADA, PWDCRA, and First Amendment, so we will turn there first. *But see Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011) ("[T]his court may affirm the decision of the district court if it is correct for any reason[.]").

Down alleges that Defendants retaliated against her for bringing her earlier lawsuit on January 9, 2014. However, the earliest adverse action alleged, conspiring with the psychologist to delay production of her examination, happened from October 30, 2015 (when the examination concluded) to spring 2016 (when Down said she was notified of the results). (*See* Plaintiff's Amended Complaint, R. 12, PageID 64, 73, 75, 77.) In the light most favorable to Down, about 22 months had elapsed from the allegedly protected activity to the adverse action. And "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("Even . . . where we articulated the principle that temporal proximity could hypothetically be sufficient in a given case, we noted the presence of additional evidence."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566–67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." (quoting *Parnell v. West*, 114 F.3d 1188, 1997 WL 271751, at *3 (6th Cir. May 27, 1997) (Table)). Down has not presented other evidence to establish causation. *See Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012) ("[H]ere [Plaintiff] has not identified evidence outside of the temporal gap to show causation."). Furthermore, Defendants have

proffered legitimate, nondiscriminatory reasons for their conduct and Down has not shown that these reasons are pretextual or factually untrue. *See Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019) (noting that "poor performance [is a] legitimate reason[ ] for an adverse-employment action"); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (citation omitted) ("To avoid summary judgment, the plaintiff is required to produce evidence that the employer's proffered reasons were factually untrue."). Down's ADA, PWDCRA, and First Amendment retaliation claims fail.

Because Down cannot show a prima facie case of retaliation under the ADA, the PWDCRA, or the First Amendment, her retaliation claims fail and we do not need to answer the question of individual liability under the PWDCRA's retaliation provision.

Down also argues that the district court abused its discretion in striking her response to Defendants' motion for summary judgment. Specifically, she asks us to review the district court's opinion and order denying her motions to file excess pages, extend her time to file a response to the motion for summary judgment, and seal an exhibit, as well as "the related text-only order striking certain pleadings filed by Down, each entered June 1, 2010." (Appellant's Br. at 1–2; *see also* Op. and Order Denying Mot. for Leave to File Excess Pages, Mot. for Extension of Time, and Mot. to Seal Ex., R. 61.) Although Down did not identify these orders in her notice of appeal, such notice "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." Fed. R. App. P. 3(c)(4). We have jurisdiction to consider this issue.

If an act has a specific deadline, a court may extend the deadline for good cause if the party failed to act because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). This "is at bottom an equitable" inquiry. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395

(1993). Relevant considerations include the danger of prejudice to the opposing party, the length of the delay, the reason for the delay, whether the delay was within the reasonable control of the moving party, and whether the movant acted in good faith. *Id.*

No abuse of discretion occurred. As noted, Down brought her second and third motions for an extension of time well after her filing deadlines passed. Her third request came over two weeks past the deadline and after Down went on a "trip to northern Michigan." (Op. and Order Denying Mot. for Leave to File Excess Pages, Mot. for Extension of Time, and Mot. to Seal Ex., R. 61, PageID 747.) Down's "recurring requests, along with the evolving reasons advanced for the delay, indicate[d] a lack of respect for the Court's deadlines and [led] the Court to question whether [Down]. . . acted in good faith." (*Id.*) Down's reasons for and control over the delay weigh against her. And although the extension Down sought was not "particularly lengthy," the court permissibly decided that Down's previous delays supported finding her neglect inexcusable. *Id.* at 748; *see Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 523 (6th Cir. 2006) (reasoning that that district court properly weighed "numerous instances of previous dilatory" conduct against finding excusable neglect). Down argues that her counsel's health concerns warranted another extension, noting that counsel now believes he was affected by an early exposure to COVID-19. The district court expressed empathy for counsel's health concerns but noted that Down did not provide "any detail or evidence to substantiate her counsel's illness," and Down's counsel admittedly did not know that he had COVID-19 at the time. (Op. and Order Denying Mot. for Leave to File Excess Pages, Mot. for Extension of Time, and Mot. to Seal Ex., R. 61, PageID 747 n.3; *see also* Appellant's Br. at 42.) Down is right that we favor determinations on the merits and not determinations based on shortcomings by counsel. (*See* Appellant's Br. at 42.) However,

Down's disagreement with the court's weighing of the relevant factors does not establish an abuse of discretion.

III.

For the foregoing reasons, we affirm the district court's entry of judgment on the pleadings for the Equal Protection and Due Process claims and we affirm the district court's grant of summary judgment on the retaliation claims.