**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 08a0761n.06

Filed: December 16, 2008

No. 07-1903

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**


LESLIE PURNELL,

      Plaintiff-Appellant,

          v.

ARROW FINANCIAL SERVICES, LLC,

      Defendant-Appellee.

On Appeal from the United States District Court for the Eastern District of Michigan at Detroit

_____/

**Before:**     **GUY and GRIFFIN, Circuit Judges; and WATSON, District Judge.**[*]

**PER CURIAM.**     Plaintiff Leslie Purnell brought this action against defendant Arrow Financial Services, LLC, alleging that Arrow's efforts to collect on a long-closed Montgomery Wards account in his name violated federal and state statutes governing debt collection practices. Plaintiff's appeal challenges the district court's decision, after a bifurcated trial on some claims, to dismiss the remaining federal claims as barred by the one-year limitations period set forth in the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k(d). After review of the record and the applicable law, we reverse and

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

remand for further proceedings consistent with this opinion.[1]

**I.**

In August 2001, Arrow Financial Services, LLC, a "debt collector" for purposes of the FDCPA, acquired a portfolio of accounts from GE Capital; including, a several-hundred dollar debt on an account that plaintiff closed in the 1980s. Arrow sent its first communication regarding the debt to plaintiff on September 16, 2001; four years before plaintiff filed suit. Plaintiff disputed the debt in writing on October 9, 2001, stating that it was the result of fraud and denying that he owed it.

Apparently without verifying the debt, Arrow sent plaintiff five collection letters and spoke to plaintiff three times over the next three years.[2] There is no dispute that the last of these communications occurred in August 2004, after which Arrow cancelled the account and discontinued all direct collection efforts. Plaintiff alleged that those communications were in violation of federal and state law, but later stipulated that he was not pursuing claims under the FDCPA for any of the direct collection efforts prior to September 1, 2004. There is no dispute that all of those letters and telephone calls occurred more than one year before the complaint was filed on September 1, 2005.

This left plaintiff's FDCPA claims based on the "indirect" collection efforts Arrow

---

[1]The district court also declined to exercise supplemental jurisdiction over Purnell's state law claims for violation of the Michigan Occupational Code, Mich. Comp. Laws § 339.901, and the Michigan Debt Collection Practices Act, Mich. Comp. Laws § 445.252. The dismissal of those claims without prejudice is not directly challenged on appeal.

[2]The letters were sent February 26, 2002, August 26, 2002, October 11, 2002, February 26, 2003, and August 9, 2004. Arrow spoke to plaintiff on August 23, 2002, October 9, 2002, and August 17, 2004.

undertook through its reporting of the debt to the credit reporting agency Equifax. Specifically, Arrow reported the debt on a monthly automated basis both before and after September 1, 2004. Arrow had been reporting the debt as "disputed," but admitted that the debt began being reported without the "dispute marker" in June 2004. That continued to be the case until July 2005, when, due to the age of the debt, Arrow instructed Equifax to delete the account from its records. Despite this instruction, and in response to correspondence from plaintiff, Equifax sent a Consumer Debt Verification (CDV) form to Arrow. Arrow responded in October 2005 by confirming the debt to Equifax, again without noting that the debt was disputed. Defendant maintained that the "dispute marker" was inadvertently dropped from plaintiff's account in June 2004, during the conversion of defendant's 22 million accounts to a new credit reporting format.

As mentioned, plaintiff filed this action on September 1, 2005, asserting claims under the FDCPA and parallel state statutes. Defendant moved for summary judgment on all of the FDCPA claims, arguing that it had engaged in no "collection activity" within the statute of limitations period. Defendant withdrew that motion, however, after discovery revealed that it had continued to report the debt to Equifax within the limitations period. New defense counsel subsequently filed another motion for summary judgment on statute of limitations grounds. Although that motion was denied as untimely, the statute of limitations defense resurfaced in defendant's pretrial motions. In conferences that followed, the district court recognized that it was a "threshold" issue that had to be decided before trial and solicited written submissions from the parties.

The district court construed the parties' stipulations and written submissions as a motion by defendant for judgment as a matter of law under Fed. R. Civ. P. 50(a). As noted, plaintiff abandoned his FDCPA claims related to Arrow's direct collection efforts—all of which occurred outside the limitations period. With respect to the "indirect" collection activities—reporting the debt to Equifax—defendant took the position that all of such claims were time-barred because they *first* occurred outside the limitations period. The district court surveyed the few district court decisions interpreting the statute, 15 U.S.C. § 1692k(d); emphasized that the statute "places significance on when a violation is made, not when it is made known"; and denied the motion with respect to the FDCPA claims based on defendant's reporting of the debt to Equifax *after* September 1, 2004. The district court specifically noted that there were "at least" two kinds of violations at issue in this case—failure to communicate that the debt was disputed (15 U.S.C. § 1692e(8)) and falsely representing the character, amount, or legal status of the debt (15 U.S.C. § 1692e(2)(A))—and concluded that "[e]ach monthly report presented a separate harm to Plaintiff under the statute and, for that matter, an independent opportunity for Defendant to comply with the statute."

After the parties filed a joint final pretrial order, the district court decided to bifurcate the trial and hear first the claims based on defendant's admission that it had failed to mark the debt as disputed in each of the reports made to Equifax after September 1, 2004. Reporting the debt without the "dispute marker" admittedly violated § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information

which is known or which should be known to be false, including the failure to communicate

that a disputed debt is disputed." What was contested at trial was whether defendant could

establish the *bona fide* error affirmative defense under 5 U.S.C. § 1692k(c) by showing that

"the violation was not intentional and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any such error." At the conclusion

of the one-day bifurcated trial, the jury found that Arrow had proved the defense based on

its claim that the "dispute marker" was inadvertently lost in the conversion of accounts to a

new computerized reporting system. Consequently, the jury found in favor of Arrow as to

each of the eleven monthly reports to Equifax from September 2004 through July 2005, and

as to the one manual confirmation of the debt to Equifax in October 2005.

In a *sua sponte* order entered within a few days of the verdict, the district court

dismissed the remaining FDCPA claims with prejudice and declined to exercise supplemental

jurisdiction over the state law claims. With respect to the FDCPA claims, the district court

provided the following rationale:

> While Plaintiff had advanced to the court a strict liability theory such that *any* reporting of a debt that is false runs afoul of FDCPA[, 15 U.S.C. § 1692e(2)], and the theory that Defendant attempted to collect the debt (chiefly by reporting it to Equifax beginning about 2001) without sending Plaintiff verification in the wake of Plaintiff's 2001 letter disputing the obligation, the court has not been persuaded that either theory can be supported against the clear time-bar imposed by the FDCPA. Even if it were true that the debt was erroneously attributed to Plaintiff, the FDCPA does not sweep as broadly as Plaintiff argues. Plaintiff has presented no binding authority stating that the FDCPA imposes strict liability upon debt collectors. Indeed, if such a rule were applied, there would seem to be no place for the *bona fide* error defense the parties have so vigorously litigated. The verdict of the jury leaves undisturbed only Plaintiff's claims under Michigan law.

(Footnote omitted.) Judgment was entered accordingly. Plaintiff filed a motion for judgment as a matter of law challenging the *bona fide* error defense—the denial of which is not at issue in this appeal. Plaintiff does appeal, however, from the denial of his motion to alter or amend judgment to allow him to proceed to trial on the dismissed FDCPA claims. This timely appeal followed.

## II.

On appeal, plaintiff seeks reinstatement of the FDCPA claims dismissed without trial that are based on the reports made to Equifax within the limitations period. Although the above-quoted passage provides the only articulation of the basis for the dismissal, it is nonetheless apparent that the district court concluded, presumably under Fed. R. Civ. P. 50(a) or 56(c), that Arrow was entitled to judgment as a matter of law because the remaining FDCPA claims were barred by the statute of limitations. When, as here, the appeal is from both the grant of summary judgment and the denial of a Rule 59(e) motion to reconsider that decision, our review is *de novo*. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Moreover, a determination that a claim was filed outside the applicable statute of limitations is a conclusion of law that is also reviewed *de novo*. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999).

The FDCPA is a broad statute aimed at eliminating the use of abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692(a); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). The statute provides that an action to enforce liability under the FDCPA may be brought "within one year from the date on which

the violation occurs." 15 U.S.C. § 1692k(d). The focus, as the district court observed, is on when the violation occurred. The district court seemed to conclude, at least initially, that the FDCPA claims alleging that the reports to Equifax after September 1, 2004, were not barred by the statute of limitations. Indeed, nothing in the order of dismissal expressed a retreat from or reconsideration of that view.

Similarly, several other district courts have held that the plaintiff's FDCPA claims were not time barred to the extent that they alleged a discrete violation of the FDCPA within the limitations period. *Accord McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000); *Pittman v. J.J. MacIntyre Co.*, 969 F. Supp. 609, 611 (D. Nev. 1997). As the court in *McCorriston* explained, the fact "[t]hat Defendants sent a dunning letter outside the limitations period does not render Plaintiff's FDCPA claim time-barred, where, as here, Plaintiff has alleged a discrete violation within the limitations period." 536 F. Supp. 2d at 1272; *see also Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (holding claim time barred because it was "not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred").[3]

This court has not addressed this precise issue, but these decisions are consistent with

---

[3]Defendant argued that all the FDCPA claims were time barred because the violations *first* occurred outside the limitations period. The district court rejected this position, declining to follow another court's conclusion that a § 1692e(8) claim accrued shortly after the plaintiff sent a letter disputing the debt. *See Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1008-09 (D.N.D. 2006), *aff'd in part on other grounds*, 519 F.3d 416, 418 (8th Cir. 2008) (affirming summary judgment for Credico because there was no evidence that any credit information was communicated to anyone within the one-year limitations period).

the principles articulated in assessing the timeliness of Title VII claims, which require that a charge be brought within a specified period after the alleged unlawful practice occurred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007). The Court in *Morgan* explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. Presumably in recognition of the first of these principles abrogating a "serial violation" exception to the statute of limitations, plaintiff abandoned all FDCPA claims based on collection activities and reports to Equifax that occurred *prior* to September 1, 2004. *Id*. at 114 (rejecting "serial violation" as basis for imposing liability for acts outside the limitations period where at least one discrete act occurred within the limitations period).

The Court in *Morgan* also explained, however, that a defendant's prior acts do "not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." 536 U.S. at 113. As the decision in *Ledbetter* makes clear, the violation must occur within the limitations period, not just be the later effects of an earlier time-barred violation. *Ledbetter*, 127 S. Ct. at 2169. In that case, also a Title VII action, the Court held that the lesser paychecks plaintiff received within the limitations period were not themselves acts of intentional discrimination, but were alleged to be the effects of prior discriminatory acts that occurred outside the limitations period.

The question for us, then, is whether the district court was correct that only the §

1692e(8) claims alleged discrete violations of the statute occurring within the limitations period. Trial was held on the claims that defendant violated §1692e(8) by "communicating" credit information known to be false; specifically, "the failure to communicate that a disputed debt is disputed." Plaintiff argues that dismissal of the remaining FDCPA claims was in error because he asserted other timely claims—apart from the "dispute marker" failures—based on the reports to Equifax within the limitations period. Specifically, plaintiff argues that the reports violated the FDCPA not only because they were made without the "dispute marker," but also because (1) the underlying debt was the result of fraud and not authorized by him, and (2) defendant continued its collection activities without first validating the debt. We address these arguments in turn.

## A.    15 U.S.C. § 1692e(2), § 1692e(8), and § 1692f(1)[4]

Plaintiff seeks to reinstate FDCPA claims based on the allegation that the debt was not actually owed by him or authorized by the credit agreement. Specifically, Arrow maintained that the debt arose from plaintiff's failure to pay for service contracts on merchandise, while plaintiff responded that he could prove that he declined the service contracts. The district court did not reach the merits of these claims, and neither do we.

On appeal, plaintiff pursues this theory under three provisions of the FDCPA which prohibit false representations of the "character, amount, or legal status of any debt," 15 U.S.C. § 1692e(A); the communication or attempted communication of credit information

---

[4]Although defendant also argues that plaintiff may not object to dismissal of plaintiff's "newly minted" § 1692e(10) claims, plaintiff has not argued for reinstatement of separate claims under § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer").

that is known or should be known to be false, 15 U.S.C. § 1692e(8); and the collection of any amount not expressly authorized by the credit agreement, 15 U.S.C. § 1692f(1). Defendant misapprehends the issue in characterizing plaintiff's argument to be that the original reports of the disputed debt tainted all subsequent conduct. Plaintiff's contention is that the violation occurs with each representation, communication, or collection activity such that each would constitute a discrete violation of the FDCPA. It is not the taint of the original decision to report the debt, but the repeated reporting of the debt within the limitations period that is the basis for plaintiff's claims.

To the extent that these violations are alleged to have occurred outside the limitations period, they are barred by the statute of limitations. But, to the extent that plaintiff can prove that such violations occurred within the limitations period, they are not time-barred.

## B.      15 U.S.C. § 1692g(b)

Next, plaintiff seeks to reinstate his claims that defendant violated 15 U.S.C. § 1692g(b) by reporting the debt to Equifax within the limitations period without first validating the debt. Section 1692g(a) requires that the debt collector provide certain written notices within five days of the *initial* communication to the consumer. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 508 n.3 (6th Cir. 2007). Those notices are to include notice that the debt will be assumed to be valid if the consumer does not dispute the debt within 30 days of receiving the notice. 15 U.S.C. § 1692g(a)(4). If the consumer disputes the debt within the 30-day period, § 1692g(b) provides, in part, that "the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of

the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector."

Here, the initial communication for purposes of § 1692g occurred in September 2001, and plaintiff apparently sent correspondence disputing the debt in October 2001. We assume for purposes of this appeal both that plaintiff's correspondence obligated defendant to cease collection of the debt until the debt was verified, and that defendant did not obtain verification of the debt before proceeding with its collection efforts. It seems that the district court dismissed claims for violation of § 1692g(b) on the grounds that any violation occurred when the defendant *first* undertook collection activities in the wake of plaintiff's October 2001 letter.

Unlike the notice requirements of § 1692g(a), however, there are no time limits for a debt collector to validate the debt under § 1692g(b). In fact, § 1692g(b) does not require the debt collector to validate the debt at all, as long as it ceases any collection activity. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992). That is, the debt collector has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). We find that the language of § 1692g(b) dictates that each "failure to cease" collection activity without having validated the debt—like each "communication" of false credit information under § 1692e(8)—presents a discrete claim for violation of the FDCPA such that only those

collection activities taken outside the limitations period would be time-barred.[5]

Defendant argues that even if not time-barred, plaintiff's § 1692g(b) claims were "futile" because it would be irreconcilable for a court to find a debt collector violated § 1692g(b) for reporting a disputed debt, when § 1692e(8) authorizes a debt collector to report an account as disputed. This misstates the § 1692g(b) claims, which allege that defendant reported the debt without first providing the requested validation. Once validation is sent to the consumer, § 1692g(b) is no longer an impediment to collection activities. The FTC's Opinion Letter touches on the intersection of these provisions, suggesting that although reporting a disputed debt without first validating the debt violates § 1692g(b), "if a dispute is received after a debt has been reported to a consumer reporting agency, the debt collector is obligated by Section 1692e(8) to inform the consumer reporting agency of the dispute." We are not persuaded that the obligation to inform the credit agency that a reported debt is disputed relieves a debt collector from any potential liability for violations of § 1692g(b). This is particularly true since it will always be the case that a § 1692g(b) claim involves a disputed debt.

Finally, Arrow contends that we may affirm dismissal of these claims on other grounds, including that plaintiff waived such claims by not pleading them, not seeking leave to amend the complaint, or not presenting evidence by way of an offer of proof at trial.

---

[5]We assume without deciding that the reporting of the debt to Equifax constitutes a "collection activity." *See FTC Staff Opinion Letter*, 1997 WL 33791232 (F.T.C.) (Dec. 23, 1997) (opining that it is not permissible under the FDCPA for a debt collector to report, or continue to report, a consumer's charged-off debt to a consumer reporting agency after the debt collector has received, but not responded to, a consumer's written dispute during the 30-day validation period under § 1692g).

While it is true that the complaint does not assert claims for violation of § 1692g(b), the joint final pretrial order included among plaintiff's claims "[c]ollection of the debt without validation following a validation request or dispute, in violation of both state and federal laws." Also, plaintiff was prevented at trial from asserting the § 1692g(b) claims in response to the *bona fide* error defense apparently because the court believed them to be time-barred. We decline to reach these issues because the district court should have the opportunity to determine in the first instance whether plaintiff should be prevented from pursuing the § 1692g(b) claims for any of these reasons.

Because we find it was error to conclude that the remaining FDCPA claims based on the reports to Equifax after September 1, 2004, were barred by the statute of limitations, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.