RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ZAHRA A. BOUYE,

      *Plaintiff-Appellant/Cross-Appellee*,

    *v*.

JAMES E. BRUCE, JR.,

      *Defendant-Appellee/Cross-Appellant*.

Nos. 21-6195/22-5016

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:20-cv-00201—David J. Hale, District Judge.

Argued:  January 12, 2023

Decided and Filed:  March 1, 2023

Before: COLE, NALBANDIAN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  James R. McKenzie, JAMES R. MCKENZIE ATTORNEY, PLLC, Louisville, Kentucky, for Appellant/Cross-Appellee. R. Brooks Herrick, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Appellee/Cross-Appellant.  **ON BRIEF:**  James R. McKenzie, JAMES R. MCKENZIE ATTORNEY, PLLC, Louisville, Kentucky, James Hays Lawson, LAWSON AT LAW, PLLC, Shelbyville, Kentucky, for Appellant/Cross-Appellee.  R. Brooks Herrick, DINSMORE & SHOHL LLP Louisville, Kentucky, for Appellee/Cross-Appellant.

─────────────────

## OPINION

─────────────────

NALBANDIAN, Circuit Judge.  Zahra Bouye sued attorney James Bruce for violating the Fair Debt Collection Practices Act.  She alleged that Bruce, representing Mariner Finance,

LLC, subjected her to an abusive debt-collection lawsuit in state court. The district court dismissed her complaint as time-barred and dismissed Bruce's later request for attorney's fees. Both appealed. Because one of Bouye's claims falls within the statute of limitations, we reverse both rulings and remand for further proceedings.

## I.

Zahra Bouye financed a furniture purchase with Winner Furniture ("Winner") through a retail installment contract ("RIC").[1] While Bouye was making payments on the contract, Winner supposedly sold the debt to Mariner Finance, LLC ("Mariner"). Eventually, Bouye defaulted on the debt.

So, on March 4, 2019, Mariner, through its attorney James Bruce, sued Bouye in Kentucky state court to recover the outstanding debt and attorney's fees "of one-third of the amount sued upon and collected." (R. 5, Amended Complaint, p. 2.) That attorney's fees request contradicted the RIC, however, which provided that Bouye would pay "reasonable attorney's fee[s] limited to 15% of the unpaid balance of this contract after default[.]" (R. 5, Amended Complaint, p. 3.)

And there was another problem with this original state-court complaint. The RIC attached to the complaint didn't establish that Winner had ever properly transferred the debt to Mariner, such that Mariner would have the right to sue on the debt. On July 2, 2019, Mariner supplemented the record with a second, updated RIC. It reflected that a Winner employee had authorized the transfer of the debt from Winner to Mariner. Next, both parties moved for summary judgment.

But the Kentucky trial court denied both motions for summary judgment and ordered Mariner to file proof of assignment "within 45 days of September 4, 2019." (R. 5., Amended Complaint, p. 4.) On September 20, Mariner again filed for summary judgment, this time with

---

[1]These facts come from the amended complaint and state-court filings appended to Bruce's motion to dismiss. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) ("We take the facts only from the complaint, accepting them as true as we must do in reviewing a Rule 12(b)(6) motion."); *see also Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (explaining that we may "take judicial notice of proceedings in other courts of record" (quoting *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999))).

the updated RIC that listed Winner's store manager as assigning the debt to Mariner.  And on that basis, the state court granted Mariner's motion for summary judgment.

Bouye appealed to the state appellate court, which agreed with her that Mariner had not sufficiently demonstrated that the transfer from Winner to Mariner was valid.  That court remanded the case, which Mariner ultimately voluntarily dismissed.

On March 19, 2020—a year and fifteen days after Mariner sued Bouye in state court— Bouye sued Bruce in federal district court for violating the Fair Debt Collection Practices Act ("FDCPA").  Relevant here is her allegation that Bruce, on Mariner's behalf, doctored the RIC mid-litigation to make it look like the debt assignment from Winner to Mariner was proper.[2] Bruce moved to dismiss Bouye's complaint as barred by the FDCPA's one-year statute of limitations or by *Rooker-Feldman* and collateral estoppel.[3]

The district court granted Bruce's motion to dismiss because Bouye filed her complaint more than a year after Mariner filed the state-court complaint.  Bouye filed a motion for reconsideration, and Bruce filed a motion for attorney's fees.  While Bouye and Bruce were waiting for the district court's decision on these motions—and unbeknownst to Bruce—Bouye and Mariner entered into a settlement agreement that released Mariner and all its "attorneys" from liability.  (Appellate R. 18, Exhibit A to the Motion, p. 21.)  A few weeks later, also unbeknownst to Bruce—but after Bruce learned of the existence of the settlement agreement— Bouye and Mariner executed an addendum that "clarif[ied]" that Bruce had not been released by the terms of the settlement agreement.  (*See* Appellate R. 21, Exhibit A to Bouye's Response, p. 24.)  The district court then denied Bouye's motion for reconsideration and Bruce's motion for attorney's fees.  Bouye timely appealed, and Bruce cross-appealed for attorney's fees.

---

[2]Bruce argues that he was not responsible for these actions since he had a right to rely on Mariner's representations in conducting the state-court litigation.  (Appellee's Br. at 13.)  That is a merits issue, which we need not address in the context of an appeal from a Rule 12(b)(6) dismissal on statute-of-limitations grounds.

[3]Because there was no final state-court judgment, neither collateral estoppel nor *Rooker-Feldman* applies here.  *See Fridley v. Horrighs*, 291 F.3d 867, 875 (6th Cir. 2002); *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

At least three months before the trial court resolved the motions for reconsideration and attorney's fees, Bruce learned of the settlement agreement. That agreement, however, was never entered into the district-court record. Nevertheless, before the parties briefed the merits of this appeal, Bruce moved to dismiss the appeal for lack of jurisdiction based on the settlement agreement. Bouye argued that Bruce had forfeited the argument or, alternatively, that the agreement didn't go to our jurisdiction to hear the case. And producing the addendum to the agreement as well as Bruce's employment contract with Mariner, Bouye also argued that Bruce was not an intended third-party beneficiary of the settlement agreement.

We denied Bruce's motion to dismiss on the basis that the settlement agreement didn't moot the appeal because, in the context of this case, the settlement agreement doesn't go to our jurisdiction to hear the case.[4] *See Bouye v. Bruce*, No. 21-6195, slip op. at 1–2 (6th Cir. June 21, 2022) (order). We then allowed the parties to proceed with their briefing on appeal.

Now, Bouye argues that at least one of her claims fell within the one-year statute of limitations. Bruce challenges Bouye's Article III standing to bring this lawsuit. He asserts that Bouye has released her claims against him through the settlement agreement and that her claims are in any event time-barred. He also cross-appeals the district court's denial of attorney's fees. We'll address each issue in turn.

## II.

We review our own subject-matter jurisdiction de novo. *Mich. Peat v. EPA*, 175 F.3d 422, 427 (6th Cir. 1999). We also review the grant of a motion to dismiss and reconsideration of that dismissal de novo. *Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 392 (6th Cir. 2022);

---

[4]We've said that "[g]enerally, the settlement of a dispute between the parties does render the case moot." *Int'l Union, United Auto., Aerospace, Agric. & Implement Workers of Am. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) (en banc); *Flight Options, LLC v. Int'l Bhd. of Teamsters*, 873 F.3d 540, 546 (6th Cir. 2017). But a case is only moot on this basis when the settlement agreement is valid and enforceable. *See Int'l Union, United Auto., Aerospace, Agr. & Implement Workers of Am.*, 697 F.2d at 720–24 (evaluating the terms of the settlement agreement before determining whether the agreement mooted the case); *cf. Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120 (1985) (per curiam) (explaining that a "complete settlement of the underlying causes of action" rendered a case "moot"). Here, although the validity per se of the agreement does not appear contested, the parties are disputing its applicability to Bruce. And because the settlement occurred after the trial court's motion-to-dismiss decision, there may be gaps in our full understanding of its implication. So we limit our review here to the statute-of-limitations question and the attorneys' fees cross-appeal. We leave the dispute as to the settlement agreement's applicability to the district court on remand. *See infra* p. 11.

*Holliday v. Wells Fargo Bank, NA*, 569 F. App'x 366, 367 (6th Cir. 2014). We must accept as true any well-pleaded factual allegations in the plaintiff's complaint but we "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (citation and quotation marks omitted). And typically, we review the denial of attorney's fees for abuse of discretion. *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir. 1994) (per curiam).

**A.**

Bruce argues that Bouye does not have Article III standing to raise her FDCPA claim because, according to him, she is only pleading a statutory harm related to the state-court lawsuit and therefore cannot meet the injury-in-fact requirement. Because a plaintiff's standing goes to our ability to hear a case, we'll address it first.

To establish Article III standing, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the defendant's conduct and would likely be redressed by a favorable decision from a court. *Rice v. Vill. of Johnstown*, 30 F.4th 584, 591 (6th Cir. 2022) (citation omitted). For the injury-in-fact requirement, a plaintiff's allegations must establish that she has experienced an injury that is "concrete, particularized, and actual or imminent." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 390 (6th Cir. 2022) (citation omitted).

Bruce argues that a statutory violation standing alone will not meet the injury-in-fact requirement. He's right about that much. *See Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("[A] statutory violation in and of itself is insufficient to establish standing."). But Bouye didn't plead a mere statutory violation. She alleged that she suffered an injury because she had to defend against a state lawsuit that Mariner had no right to bring in the first place. Under our precedent, that harm establishes a concrete injury that meets the injury-in-fact requirement. *See Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 423 (6th Cir. 2022).

**B.**

Turning to the statute-of-limitations question, Bouye argues that the district court erred in holding that her case was time-barred. Bouye raises one FDCPA violation on appeal—Bruce's

filing (for Mariner) of the updated RIC. That updated RIC showed what Bouye believed to be a contrived transfer of the debt from Winner to Mariner after Mariner filed suit against her. And she filed her federal lawsuit within a year of that alleged violation. So she says her claim is not time-barred.

Bruce argues that the violation she alleged was really just a continuing violation of Mariner's initial filing of the lawsuit. Under that view, the statute of limitations began running when Mariner filed the state-court complaint. So Bouye's claim was time-barred because she filed in federal court more than a year after Mariner filed in state court. Bouye protested below and on appeal that her claim on the second RIC is not time-barred, even if any claim she would have had on the filing of the state complaint was time-barred, because it is a separate violation from Mariner's initiation of the state suit.

First, a little background on the FDCPA. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). To accomplish that goal, the FDCPA "impos[es] affirmative requirements on debt collectors and prohibit[s] a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. §§ 1692b–1692j). And the FDCPA provides for both government and private civil enforcement. *See* 15 U.S.C. §§ 1692k, 1692l.

FDCPA plaintiffs may sue "in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date *on which the violation occurs*." *Id.* § 1692k(d) (emphasis added). And generally, the clock starts ticking "on the date the alleged FDCPA violation actually happened," not "on the date an alleged FDCPA violation is discovered." *Rotkiske*, 140 S. Ct. at 360–61.

The rule we've explained in our caselaw, albeit unpublished, is that every alleged, discrete FDCPA violation has its own statute of limitations. *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014) ("A plaintiff who alleges several FDCPA violations, some of which occurred within the limitations period and some of which occurred outside that window, will be barred from seeking relief for the untimely violations, but that plaintiff may continue to seek relief for those violations that occurred within the limitations

period.""); *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 302–03 (6th Cir. 2008) ("[T]he fact '[t]hat Defendants sent a dunning letter outside the limitations period does not render Plaintiff's FDCPA claim time-barred, where, as here, Plaintiff has alleged a discrete violation within the limitations period.'" (citation omitted)).

That rule comes straight from the text of the statute. "[T]he date on which the violation occurs" determines when the one-year statute of limitations starts running. § 1692k(d). Find the FDCPA violation in the complaint. Count out a year. That determines the statute of limitations.[5]

So we turn to Bouye's complaint to see whether she has alleged at least one timely FDCPA violation.[6] And she has. Bouye alleged that Bruce filed an updated RIC and moved for summary judgment on that basis, "affirmatively misrepresent[ing] to the Court" that the assignment of the debt from Winner to Mariner occurred "before Mariner filed suit against Ms. Bouye[.]" (R. 5, Amended Complaint, p. 5.) And that claim would have started accruing on either July 2, 2019, when Mariner filed the second RIC, or September 20, 2019, when Mariner moved for summary judgment based on that filing. Bouye filed her federal lawsuit within a year of either date, so we need not decide which date starts the clock. And Bouye can hang her hat on this alleged FDCPA violation.

---

[5]We are not alone in our approach. At least four other circuits adhere to the view that every alleged violation of the FDCPA has its own statute of limitations—the view espoused in our unpublished caselaw and formally adopted today. For instance, the Fourth Circuit has rejected grouping similar violations on the theory that the plain language of the FDCPA "unambiguously sets the date of *the violation* as the event that starts the one-year limitations period." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (emphasis in original) (quoting *Rotkiske*, 140 S. Ct. at 360). So, the Fourth Circuit says, "a 'separate violation' of the FDCPA occurs 'every time' an improper communication, threat, or misrepresentation is made." *Id.* (citation omitted). The Seventh, Eighth, and Tenth Circuits have adopted the same view. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 699 (7th Cir. 2022) (explaining that for two separate but related suits "[d]iscrete and independently wrongful acts produce different claims, even if the same wrongdoer commits both offenses and the second wrong is similar to the first" (citation and quotation marks omitted)); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 694 (8th Cir. 2017) ("It does not matter that the debt collector's violation restates earlier assertions—if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d). Each alleged violation of the FDCPA is 'evaluate[d] . . . individually to determine whether any portion of' the 'claim is not barred by the statute of limitations.'" (citation omitted)); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir. 2013) (identifying multiple alleged FDCPA violations and determining that a "[p]laintiff has failed to identify any actions taken by [the debt collector] . . . within the one-year statute of limitations").

[6]Our Circuit hasn't decided whether an FDCPA claim based on another lawsuit accrues at the time of the filing of the lawsuit or instead upon service to the defendant in that suit. *See Slorp*, 587 F. App'x at 258 n.5. For purposes of our analysis today, we'll use the time of filing—March 4, 2019—which both parties seem to agree is the relevant date.

Bruce argues that Bouye's alleged violation is a continuing effect of Mariner's initial filing of the state lawsuit and is therefore time-barred because she didn't file within a year of Mariner's initiation of the state suit. *See Slorp*, 587 F. App'x at 259 ("But the violations that occur within the limitations window must be discrete violations; they cannot be the later effects of an earlier time-barred violation." (citation omitted)).

To make this argument, Bruce pulls from our caselaw on the continuing-violation doctrine. Originally, "the continuing violation theory [] [wa]s an equitable exception to the time limits for filing an administrative complaint" in the Title VII context. *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001). The Sixth Circuit identified two kinds of continuing violations, both specific to the Title VII context[7]: (1) when there was evidence of discrete present discriminatory activity or (2) when there was a standard operating procedure of discrimination against a class that was established over time. *Sharpe v. Cureton*, 319 F.3d 259, 266–67 (6th Cir. 2003) (citation omitted). So, when a plaintiff's claims fell into either of these categories, he was "entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Id.* at 267 (citation omitted). In other words, a Title VII plaintiff could sweep in earlier, time-barred claims into a later, timely claim's statute of limitations.

But in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court eliminated the first kind of continuing violations as eligible for the continuing-violation doctrine. After *Morgan*, plaintiffs can no longer rely on the continuing-violation doctrine "to allow recovery for acts that occurred outside the filing period" when those acts were "discrete acts of discrimination or retaliation[.]" *Sharpe*, 319 F.3d at 267 (citing *Morgan*, 536 U.S. at 112). That's because discrete acts of discrimination are "easy to identify" and therefore don't warrant an extension of the statute of limitations. *Morgan*, 536 U.S. at 114. On the other hand, the *Morgan* Court said that a Title VII plaintiff could still invoke the doctrine when his claim was based on standard operating procedure "that cannot be said to occur on any particular day" but instead "occur[s] over a series of days or years." *Sharpe*, 319 F.3d at 267 (citing

---

[7]We later extended the doctrine "to claims for deprivations of civil rights." *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (citations omitted).

*Morgan*, 536 U.S. at 115). That's because "[s]uch claims are based on the cumulative effect of individual acts," and it's harder to pin down a date for the statute of limitations for these claims. *Morgan*, 536 U.S. at 115.

With this significant narrowing of the continuing-violation doctrine in the Title VII context in mind, we turn back to the FDCPA. Bruce is right that we shouldn't apply the continuing-violation doctrine in the FDCPA context. In the first place, we have been "extremely reluctant" to extend the continuing-violation doctrine outside the Title VII context. *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (citation omitted). And the doctrine is antithetical to the plain text of § 1692k(d). In the context of § 1692k(d), the Supreme Court said that "[w]e must presume that Congress 'says in a statute what it means and means in a statute what it says there.'" *Rotkiske*, 140 S. Ct. at 360 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

"Here, the text of § 1692k(d) clearly states than an FDCPA action 'may be brought . . . within one year from the date on which the violation occurs.'" *Id.* (quoting 15 U.S.C. § 1692k(d)). And we're bound to respect Congress's choice. *See id.* at 360–61 ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012))). So we decline to engage in "[a]textual judicial supplementation" by extending the continuing-violation doctrine to the FDCPA context. *Id.* at 361.

*Morgan* backs up our view. *Morgan* explained that when plaintiffs are bringing discrete claims under Title VII, the continuing-violation doctrine has no application. *Morgan*, 536 U.S. at 114. And in the FDCPA context, the only kinds of claims a plaintiff can bring are discrete violations of the FDCPA. There is no "environment of FDCPA violations" claim, analogous to the Title VII standard-operating-procedure claims that still have life under the continuing-violation doctrine. In short, the continuing-violation doctrine has no vitality in the FDCPA context. *See Slorp*, 587 F. App'x at 257–58.

The continuing-violation doctrine doesn't have anything to do with this case, though, because Bouye never invoked it. And it makes sense that she didn't. The whole benefit of the

continuing-violation doctrine is that it allows a plaintiff to sweep in a series of component acts that comprise a claim, if one of those acts was within the limitations period. *See id.* at 258. But Bouye isn't trying to sweep in acts that would otherwise be outside of the filing period. She is seeking redress for a single claim that is not time-barred—Bruce's filing of the second, allegedly false RIC in the state lawsuit on Mariner's behalf.

Bruce argues that a claim based on the second RIC could only be a continuing-violation claim based on Mariner's initial filing of the lawsuit. But Bouye's single claim is independent of Mariner's initial filing of the lawsuit—not a continuing effect of it—because it is a standalone FDCPA violation. This is not a case where Bruce simply "reaffirmed" the legitimacy of the state suit throughout the litigation. *See id.* at 259. Rather, the allegation is that Bruce introduced an RIC with a false assignment of debt that occurred after the lawsuit was filed.

If we were to only consider the date Mariner filed suit, like Bruce asks us to, without regard to subsequent FDCPA violations within that lawsuit, we would create a rule that disregards the fact that § 1692k(d) creates an independent statute of limitations for each violation of the FDCPA. *See Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (explaining that the approach we adopt today "avoids creating a safe harbor for unlawful debt activity"). And if we adopted Bruce's approach, we'd be saying that "so long as a debtor does not initiate suit within one year of the first violation, a debt collector [is] permitted to violate the FDCPA with regard to that debt indefinitely and with impunity." *Id.* We decline Bruce's invitation. So the district court erred in dismissing the entire case on statute-of-limitations grounds.

Bruce also invokes the settlement agreement, which, on its face, would seem to bar Bouye's claims on the merits. But as we discussed above, Bruce invoked that agreement for the first time in support of his jurisdictional argument that the agreement moots this suit. Bouye defended against this argument by introducing several documents in her response to Bruce's motion to dismiss on appeal, including an addendum to the settlement agreement and Bruce's representation contract with Mariner. We rejected Bruce's jurisdictional argument in our order denying the motion to dismiss on appeal. *Bouye*, No. 21-6195, slip op. at 2–3 (order).

With regard to what happened in the district court, however, by the time that Bruce had learned about the settlement, he had already prevailed on the statute of limitations. So rather than address Bruce's affirmative defense that the settlement agreement controls the outcome without the benefit of the district court's consideration, we think the better route is remand for the district court to evaluate in the first instance any merits argument based on the settlement agreement. The parties' arguments "may be considered by the district court as it may deem appropriate." *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1582 (6th Cir. 1990). And out of an abundance of caution, we also vacate the district court's order denying attorney's fees since our result today allows the litigation below to continue. So we reverse the district court's dismissal and vacate the attorney's fees order and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.